**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Raymond J. LaCourse and
Valerie LaCourse

    v.                                    Civil No. 14-cv-013-LM
                                          Opinion NO. 2015 DNH 077
Ocwen Loan Servicing, LLC
and Altisource Residential
Corp.

**O R D E R**

In a case that has been removed from the Rockingham County
Superior Court, Raymond and Valerie LaCourse have sued Ocwen
Loan Servicing, LLC ("Ocwen") and Altisource Residential Corp.
("Altisource") in 11 counts, asserting claims arising out of
their unsuccessful attempt to obtain a modification of their
mortgage loan.  Before the court is defendants' motion to
dismiss plaintiffs' amended complaint for failure to state a
claim upon which relief can be granted.  See Fed. R. Civ. P.
12(b)(6).  Plaintiffs object.  For the reasons that follow,
defendants' motion to dismiss is granted.

## I. The Legal Standard

Under Rule 12(b)(6), the court must accept the factual
allegations in the complaint as true, construe reasonable
inferences in the plaintiff's favor, and "determine whether the
factual allegations in the plaintiff's complaint set forth a
plausible claim upon which relief may be granted."  Foley v.

Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014)

(citation omitted).  A claim is facially plausible "when the

plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the

misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009).  Analyzing plausibility is "a context-specific task" in

which the court relies on its "judicial experience and common

sense."  Id. at 679.

## II. Background

The factual background recited in this section is drawn

from plaintiffs' first amended complaint.

In 2000, plaintiffs were granted a deed to a property in

Chester, New Hampshire.  In January 2011, they refinanced the

mortgage that secured repayment of the loan they used to

purchase that property.

In October 2011, plaintiffs did not make their scheduled

mortgage payment.  Three months later, they attempted to resume

making their payments.  Their mortgagee rebuffed that attempt

and told plaintiffs that they were in default.[1]

---

[1] While the amended complaint does not say so directly, the
court infers that plaintiffs' mortgagee was Bank of America,
which has been dismissed from this case by stipulation in May
2014, see doc. no. 14.

Also in October 2011, plaintiffs filed for bankruptcy under Chapter 13.  Four months later, "their Chapter 13 bankruptcy was converted to a Chapter 7 bankruptcy."  First Am. Compl. (doc. no. 20) ¶ 21.  Plaintiffs allege that their "mortgage debt was discharged in bankruptcy in or around June 2013, and [that their bankruptcy] case [was] closed in August 2013."  Id. ¶ 22.

Later in their amended complaint, plaintiffs allege that they "discharged in bankruptcy their mortgage and other debts." Id. ¶ 46.  While paragraph 46 could be read as alleging that plaintiffs' mortgage was discharged in bankruptcy, such a reading is inconsistent with plaintiffs' allegations that, after they emerged from bankruptcy in August 2013: (1) their "mortgage was transferred to Defendant Ocwen on September 16, 2013,"[2] id. ¶ 16; and (2) their "mortgage debt of $317,886 was allegedly assigned [to Altisource] on or about January 7, 2014," id. ¶ 23. Because an allegation that plaintiffs' mortgage was discharged in bankruptcy is inconsistent with plaintiffs' other allegations

---

[2] From that somewhat ambiguous statement, the court infers, favorably to plaintiffs, that Ocwen did not receive an assignment of their mortgage and become plaintiffs' mortgagee, but, rather, took on the role of a mortgage servicer for the mortgagee.  That inference is favorable to plaintiffs because it seems unlikely that Ocwen would be subject to liability under the Federal Fair Debt Collection Practices Act, which is the legal basis for Counts V, VI, and VII, if it was a mortgagee rather than a mortgage servicer.  See, e.g., Somin v. Total Cmty. Mgmt. Corp., 494 F. Supp. 2d 153, 160 (E.D.N.Y. 2007).

concerning their mortgage's post-bankruptcy existence, the court construes paragraph 46 as alleging only that plaintiffs' debt to their lender was discharged in bankruptcy, but not their mortgage.[3]

After they emerged from bankruptcy, plaintiffs applied to Ocwen for a mortgage modification.[4]  In July 2014, Ocwen denied plaintiffs' application on grounds that their "debt to income ratio exceeded the percentage necessary [to qualify for a modification] and would create further hardship."  First Am. Compl. ¶ 17.  Plaintiffs' mortgage was still in foreclosure when they filed their amended complaint in September 2014.

At some point, Ocwen calculated plaintiffs' income to be at least $6,619.42 per month.  Plaintiffs, in turn, calculate their income to be at least $6,698 per month.  However, plaintiffs make no allegations about when Ocwen made those calculations, the circumstances under which it did so, or how they,

---

[3] This construction, in turn, is consistent with the general rule that a discharge in bankruptcy extinguishes a borrower's debt to a lender but does not affect a secured creditor's lien on collateral that secures the borrower's promise to repay the lender.  See, e.g., Worrall v. Fed. Nat'l Mortg. Ass'n, No. 13-cv-330-JD, 2013 WL 6095119, at *6 (D.N.H. Nov. 20, 2013); Collins v. Wealthbridge Mortg. Corp. (In re Collins), 474 B.R. 317, 320 (Bankr. D. Me. 2012).

[4] Plaintiffs' allegation that they applied for a mortgage modification after they emerged from bankruptcy is yet another reason why paragraph 46 of their amended complaint cannot reasonably be read as alleging that their mortgage was discharged in bankruptcy.

plaintiffs, relied upon any representations Ocwen may have made concerning its calculations.  Moreover, plaintiffs allege discrepancies between their income calculations and those made by Ocwen, but they make no similarly specific allegations concerning the parties' calculations of plaintiffs' debts. Finally, plaintiffs allege:

> If [their] mortgage was modified to re-amortize over 30 years, at an interest rate of 4%, their total monthly mortgage payment, including principal, interest, taxes and insurance would be approximately $2,224.  Resulting in a Debt to Income ratio of about 33%.

> Plaintiffs have sufficient income and it appears that they could pay their loan under a commercially reasonable modification.

First Am. Compl. ¶¶ 27-28.

On October 16, 2013, plaintiffs' attorney informed Ocwen that he represented plaintiffs with regard to their mortgage debt and that any further communications concerning that debt should be addressed to him.[5]  After receiving the letter of representation described above, Ocwen sent plaintiffs two letters, one in October 2013, the other in December 2013.

---

[5] In addition, plaintiffs' attorney challenged three elements of the $354,759.03 mortgage obligation Ocwen identified as subject to recovery through foreclosure: (1) $26,696.11 in interest: (2) $15,778.15 in escrow advances; and (3) a "suspense balance" of $1,529.83.

With regard to Altisource's connection to the events giving rise to plaintiffs' claims, the introduction to their amended complaint alleges that

> [t]he Note and Mortgage in question appear[ ] to have been transferred to Altisource Residential Corporation on or about January 17, 2014 when an Assignment of Mortgage from Bank of America, NA to "Christina Trust, A Division Of Wilmington Savings Fund Society, FSB, Not In Its Individual Capacity But As Trustee Of ARLP Trust 2," was filed in the Rockingham County Registry of Deeds at Book 5508, Page 0818.

First Am. Compl. ¶ 3.  The amended complaint's factual allegations mention Altisource three more times:

> Defendant Altisource, through its agents, or predecessors in interest have wrongfully denied the plaintiffs' modification.
>
> . . . .
>
> Ocwen acts with the [assent] of Altisource, for its benefit, and subject to its control.
>
> All Counts apply to Ocwen and to Altisource through the theory of agency.

Id. ¶¶ 30, 39, 40.  That is, plaintiffs' sole theory of liability against Altisource is vicarious liability for the actions of Ocwen.

Based upon the foregoing, plaintiffs assert that defendants are liable to them for: negligent misrepresentation (Count I); negligence (Count II); breach of the implied covenant of good faith and fair dealing (Count III); estoppel (Count IV); violation of the federal Fair Debt Collection Practices Act

(Counts V, VI, and VII); violation of New Hampshire's Unfair,
Deceptive or Unreasonable Collection Practices Act (Count VIII);
violation of New Hampshire's Consumer Protection Act (Counts IX
and X); and negligent infliction of emotional distress (Count
XI).[6]

## III. Discussion

Defendants move to dismiss on a variety of grounds.
First, they argue that plaintiffs have failed to allege
sufficient facts to connect Altisource to this matter.  Next,
they contend that plaintiffs have brought claims arising from
things that took place during the course of the parties'
settlement negotiations, which is impermissible under the rules
of evidence.  Then, they address plaintiffs' 11 counts
individually, identifying ways in which each of them fails to
state a claim upon which relief can be granted.  In the
discussion that follows, the court begins with defendants' two
global arguments and then considers defendants arguments against
each of plaintiffs' theories of recovery.

---

[6] Plaintiffs' first amended complaint also includes a count
labeled "Standing," see doc. no. 20, at 18, but that "claim" was
dismissed, sua sponte, in the order granting plaintiffs' motion
to amend, see doc. no. 22, at 4.

A. Altisource

Defendants first argue that plaintiffs have not adequately alleged facts to support any theory of liability against Altisource.  The court does not agree.

To be sure, plaintiffs have not alleged sufficient facts to support any claim for direct liability against Altisource, nor have they attempted to do so.  While questions concerning Altisource's relationship with Ocwen remain subject to litigation on summary judgment and/or at trial, plaintiffs adequately allege that: (1) by virtue of the January 2014 assignment, Altisource became their mortgagee; and (2) Ocwen serviced their mortgage for Altisource.  That is sufficient to allege an agency relationship between Ocwen and Altisource that could make Altisource vicariously liable for actions undertaken by Ocwen during the course of servicing plaintiffs' mortgage. Thus, Altisource is not entitled to a blanket dismissal of plaintiffs' claims against it.

B. Rules of Evidence

Next, defendants argue that all the claims against them should be dismissed because: (1) plaintiffs originally filed this action in November 2013, and based their claims exclusively upon conduct by its former mortgagee, Bank of America; (2) plaintiffs' September 2014 amended complaint is based upon conduct by Ocwen that took place after this suit was first

filed, and in the context of negotiations to settle the case; and (3) the rules of evidence (both federal and state), bar the introduction of evidence from settlement negotiation which, necessarily bars plaintiffs from basing legal claims on things that happened during the course of settlement negotiations. That argument, asserted without the benefit of any legal authority, is not persuasive.

A motion to dismiss tests the adequacy of a plaintiff's complaint.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Guerra-Delgado v. Popular, 774 F.3d 776, 780 (1st Cir. 2014). Defendants' argument does not test the adequacy of plaintiffs' amended complaint, but rather, is premised upon its own factual allegations concerning settlement negotiations between themselves and plaintiffs.  If this case should happen to reach summary judgment or trial, then defendants are, of course, free to challenge the admissibility of various items of evidence on which plaintiffs may attempt to rely.  But at this stage in the proceedings, the rules of evidence provide no basis for dismissing plaintiffs' claims.

### C. Count I

Count I is plaintiffs' claim that defendants are liable to them for negligent misrepresentation because Ocwen told them that their "debt to income ratio exceeded the percentage necessary and would create further hardship."  First Am. Compl.

¶ 45.  That statement was false, plaintiffs contend, because they "discharged in bankruptcy their mortgage and other debts," id. ¶ 46, and, as a consequence, "[u]pon information and belief Defendant Ocwen inappropriately included the Plaintiff[s'] discharged debt in [its] calculations," id. ¶ 47.  Plaintiffs do not, however, allege: (1) any specific discharged debt that Ocwen inappropriately included in its calculations;[7] or (2) the effect that resulted from including allegedly discharged debts in the calculation of their debt-to-income ratio.  Ocwen is entitled to dismissal of Count I because plaintiffs' complaint does not adequately allege that they ever relied upon Ocwen's alleged misrepresentation of their debt-to-income ratio.

Under the common law of New Hampshire, the elements of a claim for negligent misrepresentation "are a negligent misrepresentation of a material fact by the defendant and justifiable reliance by the plaintiff." Wyle v. Lees, 162 N.H. 406, 413 (2011) (citing Snierson v. Scruton, 145 N.H. 73, 78 (2000)).  Moreover, "[i]t is the duty of one who volunteers information to another not having equal knowledge, with the intention that he will act upon it, to exercise reasonable care

_____

[7] Nor have plaintiffs explained how their mortgage debt could possibly have been included in Ocwen's calculation of their debt-to-income ratio.

to verify the truth of his statements before making them."
Wyle, 162 N.H. at 413.

The principal problem with plaintiffs' negligent-misrepresentation claim is that they allege no facts concerning either action that Ocwen intended for them to take (or refrain from), or action that they actually took (or refrained from), in reliance upon the only statement alleged in Count I, i.e., Ocwen's statement about their debt-to-income ratio.  Absent at least some direct or inferential factual allegation concerning the reliance element of plaintiffs' negligent-misrepresentation claim, Count I does not state a claim upon which relief can be granted against Ocwen.  See Feingold v. John Hancock Life Ins. Co. (USA), 753 F.3d 55, 60 (1st Cir. 2014).  And absent a sufficient allegation of Ocwen's direct liability, plaintiffs have necessarily failed to state a claim for vicarious liability against Altisource.  Thus, both defendants are entitled to dismissal of Count I.  See id.

Furthermore, while plaintiffs cite the rule that those with greater knowledge have a duty to verify the truth of statements they make to those with lesser knowledge, see First Am. Compl. ¶ 43, they allege no facts to support the proposition that they had less knowledge than Ocwen had concerning the subject matter of the statement at issue, which is the amount of their income

11

and the effect of their bankruptcy discharge on the amount of their debts.

D. Count II

Count II is plaintiffs' claim that defendants are liable to them in negligence for engaging in essentially the same conduct that underlies Count I.  Compare First Am. Compl. ¶¶ 45-47 with id. ¶¶ 54-56.  Plaintiffs characterize that conduct as making "misrepresentations and omissions regarding and throughout the modification process."  Id. ¶ 53.  Defendants are entitled to dismissal of Count II because plaintiffs do not adequately identify a duty that Ocwen owed them.

The New Hampshire Supreme Court has recently described the elements of a common-law negligence claim:

> To recover for negligence, the plaintiff must demonstrate that the defendant had a duty to the plaintiff, that [it] breached that duty, and that the breach proximately caused injury to the plaintiff. Pesaturo v. Kinne, 161 N.H. 550, 557, 20 A.3d 284 (2011).  Absent the existence of a duty, the defendant cannot be liable for negligence.  Carignan v. N.H. Int'l Speedway, 151 N.H. 409, 412, 858 A.2d 536 (2004).

England v. Brianas, 166 N.H. 369, 371 (2014).  "Whether a duty exists in a particular case is a question of law."  Id.

In a case involving claims against "a number of entities involved in the origination, servicing, and eventual foreclosure of [a] mortgage loan," Moore v. Mort. Elec. Reg. Sys., Inc., 848

F. Supp. 2d 107, 113 (D.N.H. 2012), Judge Laplante had this to say with respect to the plaintiffs' negligence claim:

> [U]nder New Hampshire law, the relationship between a lender and borrower is contractual in nature, Ahrendt v. Granite Bank, 144 N.H. 308, 311, 740 A.2d 1058 (1999), and . . . the existence of such a contractual relationship typically prohibits recovery in tort, see Wyle v. Lees, 162 N.H. 406, 409-10, 33 A.3d 1187 (2011).  But New Hampshire law also recognizes that a contracting party may be "owed an independent duty of care outside the terms of the contract."  Id. at 410, 33 A.3d 1187.  Thus, the New Hampshire Supreme Court has concluded that a lender owes a borrower a duty not to disburse its loan funds without authorization, Lash v. Cheshire Cnty. Sav. Bank, Inc., 124 N.H. 435, 438–39, 474 A.2d 980 (1984), and that a mortgagee, in its role as seller at a foreclosure sale, owes a duty to the mortgagor "to obtain a fair and reasonable price under the circumstances."  Murphy v. Fin. Dev. Corp., 126 N.H. 536, 541, 495 A.2d 1245 (1985).
>
> Where the existence of such a duty is claimed, though, "[t]he burden is on the borrower, seeking to impose liability, to prove the lender's voluntary assumption of activities beyond those traditionally associated with the normal role of a money lender."  Seymour v. N.H. Sav. Bank, 131 N.H. 753, 759, 561 A.2d 1053 (1989).

Moore, 848 F. Supp. 2d at 133.

Here, the duty on which Count II rests is "an affirmative duty to act as a reasonably prudent person would [which] includes a duty to treat the Plaintiffs in good faith while following all State and Federal Consumer Protection Laws and to negotiate in a commercially reasonable manner."  First Am. Compl. ¶ 52.  Like the plaintiffs in Moore, who alleged that the defendants, including several mortgage servicers, "owed them a

generalized 'duty to act with reasonable care,'" Moore, 848 F. Supp. 2d at 132, plaintiffs in this case have failed to allege that Ocwen voluntarily assumed any duties "beyond those traditionally associated with the normal role of a money lender." Id. at 133.  Thus, Count II does not state a negligence claim upon which relief can be granted against either Ocwen or Altisource, which entitles both defendants to dismissal of Count II.

E. Count III

Count III is plaintiffs' claim that Ocwen breached the covenant of good faith and fair dealing implied into its "verbal agreement [with them] to seek [a] mutually beneficial and commercially reasonable . . . mortgage workout resolution." First Am. Compl. ¶¶ 62-63.  Plaintiffs further allege that "[t]he common purpose and justified expectation in this instance was to avoid foreclosure to the benefit of the parties and arrive at a reasonable alternative mutually beneficial to all parties," id. ¶ 65, and that Ocwen breached the implied covenant "[b]y keeping the Plaintiffs uninformed of the specific details of their modification review," id. ¶ 67(a); and "[b]y wrongfully denying the Plaintiffs' modification application," id. ¶ 67(b). Defendants are entitled to dismissal of Count III because plaintiffs have not adequately alleged any conduct by Ocwen that breached the implied covenant of good faith and fair dealing.

14

As defendants point out, and plaintiffs do not dispute, under New Hampshire law, "[a] necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing is a contract between the parties." Moore, 848 F. Supp. 2d at 127; see also J&M Lumber & Constr. Co. v. Smyjunas, 161 N.H. 714, 724 (2011). Unlike the plaintiffs in Moore, who relied upon their mortgage as the contract underlying a claim for breach of the covenant of good faith and fair dealing against their mortgagee, plaintiffs in this case rely upon a purported agreement between themselves and Ocwen, which was the servicer of their mortgage.

In the "Factual Allegations" section of plaintiffs' amended complaint, they say nothing about an agreement between themselves and Ocwen. In Count III, however, plaintiffs allege:

> Defendant Ocwen offered and the Plaintiffs accepted an offer to work out [a] resolution with the mortgage.
>
> The parties therefore had a verbal agreement [to] seek [a] mutually beneficial and commercially reasonable resolution.
>
> The parties therefore had a verbal agreement for [a] mortgage workout resolution.

First Am. Compl. ¶¶ 61-63.

Presumably in response to defendants' argument that the foregoing allegations are insufficient to plead the existence of a contract, plaintiffs now describe the contract underlying their breach-of-covenant claim slightly differently.

Specifically, they refer to a document from Ocwen's web site

titled "Request for Mortgage Assistance (RMA)/Hardship

Affidavit" ("RMA"), which includes the following language:

> NOTE TO BORROWERS WITH A FORECLUSURE SALE SCHEDULED IN
> THE NEXT 37 DAYS:
>
> If we receive your Complete Application for
> modification* at least 7 business hours before a
> scheduled foreclosure sale date, we will not complete
> the foreclosure action until we review and decision
> your application.
>
> ***\* This ONLY applies if you wish to keep your property.
> Foreclosure sales scheduled in the next 37 days <u>cannot</u>
> be stopped if you wish to give back or sell your
> property.***

Pls.' Obj. (doc. no. 24), Attach. 6, at *2.[8]  According to

plaintiffs:

> [Their] completed application constitutes
> acceptance of this offer.  The Defendants['] 
> consideration is the delayed foreclosure sale date and
> the Plaintiffs' consideration is sharing personal and
> highly sensitive information with the Defendants.
> There was clearly a meeting of the minds because when
> the Defendants received the form, they delayed [the]
> foreclosure sale as agreed upon.

Pls.' Obj. 13.  Assuming, for the sake of argument, that there

was an agreement between the parties along the lines described

in the RMA, Count III faces an insurmountable problem:

---

[8] Given the general similarity between the verbal promise
alleged in the amended complaint and the agreement described in
the RMA, the court will presume, favorably to plaintiffs, that
the RMA is incorporated into the amended complaint and, as a
consequence, is properly before the court.  See Foley, 772 F.3d
at 72.

plaintiffs' failure to allege any conduct by Ocwen of the sort proscribed by the implied covenant of good faith and fair dealing.

In New Hampshire, the implied covenant of good faith and fair dealing applies to "three distinct categories of contract cases: those dealing with standards of conduct in contract formation, [those dealing] with termination of at-will employment contracts, and [those dealing] with limits on discretion in contractual performance." Centronics Corp. v. Genicom Corp., 132 N.H. 133, 139 (1989). This case falls within the third category. Within that category, the rule is that

> under an agreement that appears by word or silence to invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value, the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting.

Id. at 143.

As a preliminary matter, the contract described in the RMA does not appear to have given Ocwen sufficient discretion to deprive plaintiffs of a substantial proportion of the agreement's value. For plaintiffs, the agreement's value was a delay of their foreclosure until Ocwen reviewed their application for a mortgage modification and rendered a decision on that application. But, even if the contract did vest Ocwen

with discretion enough to deprive plaintiffs of that value, they themselves allege that Ocwen did, in fact, "delay[ ] [the] foreclosure sale as agreed upon," and they further allege that when they filed their amended complaint, several months after Ocwen rendered a decision on their application for a modification, their mortgage was still in foreclosure, which means that the foreclosure sale was still on hold.  If Ocwen fully performed its obligations under the agreement on which plaintiffs base their claim, they cannot also claim that Ocwen breached the implied covenant of good faith and fair dealing by exercising its contractual discretion in a way that deprived them of the value of their agreement.  Accordingly, as to the covenant of good faith and fair dealing, plaintiffs have failed to state a claim upon which relief can be granted, which entitles both defendants to dismissal of Count III.

### F. Count IV

Count IV is titled "Estoppel."  In it, plaintiffs recite the elements of both promissory estoppel and equitable estoppel. Plaintiffs assert their claim(s) this way:

> Defendants made intentional or negligent
> [mis]representations of material facts: that if the
> Plaintiffs provided the required documentation as part
> of their modification application that their
> modification application would be properly considered.
>
> Plaintiffs remained unaware of the truth of the
> matters misrepresented by the defendants and
> reasonably relied on the representation that if they

> continued to comply with the Defendants' requests
> throughout the modification process they would avoid
> foreclosure.
>
> Plaintiffs were induced to rely upon these
> representations and suffered damages in the form of
> additional late payments, added costs to their loan,
> and legal and advocate fees because of their reliance
> on Defendants' promise that their loan modification
> would be properly considered.

First Am. Compl. ¶¶ 72-74.

Under the theory of promissory estoppel, "a promise reasonably understood as intended to induce action is enforceable by one who relies upon it to his detriment or the benefit of the promisor." Panto v. Moore Bus. Forms, Inc., 130 N.H. 730, 739 (1988) (citing Restatement (Second) of Contracts § 90 (1981)). Furthermore, "application of promissory estoppel is appropriate only in the absence of an express agreement." Great Lakes Aircraft Co. v. City of Claremont, 135 N.H. 270, 290 (1992). "Equitable estoppel, on the other hand, does not involve a promise [but instead] serves to 'forbid one to speak against his own act, representations, or commitments to the injury of one to whom they were directed and who reasonably relied thereon.'" Id. (quoting 28 Am. Jur. 2d Estoppel and Waiver § 28, at 629).

As with the breach-of-covenant claim asserted in Count III, plaintiffs have recast the promise on which Count IV is based. They shift from: (1) a promise by Ocwen to properly consider

their application for a modification if they submitted all the required documentation; to (2) a promise by Ocwen to forestall foreclosure until it rendered a decision on plaintiffs' application for a modification.  That move undermines a claim for either promissory estoppel or equitable estoppel.

"[P]romissory estoppel is appropriate only in the absence of an express agreement."  Great Lakes, 135 N.H. at 290 (emphasis added).  But in Section V of their objection, plaintiffs argue that the promise on which they base Count IV was part of an express agreement.  See Pls.' Obj. (doc. no. 24) 12.  Thus, plaintiffs have failed to state a claim for promissory estoppel.  Even if the promise upon which plaintiffs base their estoppel claim was not part of an express agreement, plaintiffs also allege that Ocwen kept its promise to forestall foreclosure, so there is nothing left of that promise for the court to enforce, and the whole point of promissory estoppel is to enforce promises that stand beyond the reach of a claim for breach of contract.  See Great Lakes, 135 N.H. at 290.  Turning to equitable estoppel, and presuming that plaintiffs are actually asserting a claim under that theory, that claim fails as a matter of law because "[e]quitable estoppel . . . does not involve a promise," Great Lakes, 135 N.H. at 290, and Count IV is based upon nothing more than the promise described in Ocwen's RMA.  Because both of the estoppel claims asserted in Count IV

are based upon an express promise drawn from Ocwen's RMA,
plaintiffs have failed to state a claim for either promissory
estoppel or equitable estoppel against either Ocwen or
Altisource.  Thus, they are entitled to dismissal of Count IV.

G. Counts V-VII

In Counts V, VI, and VII, plaintiffs assert claims arising
under the federal Fair Debt Collection Practices Act ("FDCPA"),
15 U.S.C. § 1692.  Plaintiffs seeking to recover under the FDCPA
must show that

> (1) they have been the object of collection activity
> arising from a consumer debt; (2) the defendant
> attempting to collect the debt qualifies as a 'debt
> collector' under the Act; and (3) the defendant has
> engaged in a prohibited act or has failed to perform a
> requirement imposed by the [Act].

Moore, 848 F. Supp. 2d at 124 (quoting Beadle v. Haughey, No.
Civ.04-272-SM, 2005 WL 300060, at *7 (D.N.H. Feb. 9, 2005);
citing Gilroy v. Ameriquest Mortg. Co., 632 F. Supp. 2d 132,
134-37 (D.N.H. 2009)).  Rather than dealing with plaintiffs'
FDCPA claims count-by-count, the court organizes this section in
terms of the various subsections of § 1692 that Ocwen is alleged
to have violated.

1. Section 1692c

Plaintiffs claim that Ocwen violated 15 U.S.C. §
1692c(a)(2) by contacting them in October and December 2013,
after they informed Ocwen that they were represented by counsel.

21

Plaintiffs have failed to state a claim upon which relief can be granted because they have not adequately alleged that the letters at issue were sent in connection with debt collection.

The statute on which this claim is based, which is titled "Communication in connection with debt collection," provides, in pertinent part:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer <u>in connection with the collection of any debt</u> –
>
> . . . .
>
>> **(2)** if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

15 U.S.C. § 1692c(a)(2) (emphasis added).

The October letter from Ocwen to plaintiffs was a response to plaintiffs' request for Ocwen to perform research regarding their loan.  The letter concludes with the following notation:

> This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose.  However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.

Pls.' Obj. (doc. no. 24), Attach. 2, at 1 (emphasis omitted).
Notwithstanding the first sentence of Ocwen's disclaimer,
plaintiffs have failed to allege that the October letter was a
communication "in connection with the collection of [a] debt,"
15 U.S.C. § 1692c(a)(2), which is a necessary prerequisite for
liability under § 1692c(a)(2).

If the research plaintiffs requested concerned their
obligations under the mortgage lien against their property,
Ocwen's letter could not have been connected to the collection
of a debt because a mortgage lien is not a debt.  As Judge
DiClerico recently explained:

> Following a discharge in bankruptcy, an automatic
> injunction precludes collection of discharged debts.
> In re Canning, 706 F.3d 64, 69 (1st Cir. 2013).
> Despite the broad scope of the discharge injunction, a
> secured creditor is not barred from "recovering on
> valid prepetition liens, which, unless modified or
> avoided, ride through bankruptcy unaffected and are
> enforceable in accordance with state law."  Id.

Worrall v. Fed. Nat'l Mortg. Ass'n, No. 13-cv-330-JD, 2013 WL
6095119, at *6 (D.N.H. Nov. 20, 2013) (emphasis added).  In
other words:

> A bankruptcy discharge relieves the debtor of
> personal liability for pre-petition debts.  Absent
> avoidance or modification, a discharge does not affect
> a secured creditor's lien in its collateral; the lien
> survives and is enforceable after the bankruptcy
> proceeding, or after obtaining relief from the
> automatic stay, in accordance with state law.  In re
> Canning, 442 B.R. [165,] 170 [(Bankr. D. Me. 2011)];
> In re Pratt, 462 F.3d [14,] 17 [(1st Cir. 2006)].
> Therefore, a mortgagee may lawfully pursue its in rem

> rights through foreclosure after a discharge has
> entered, or after obtaining relief from the automatic
> stay, but may not pursue a discharged debtor for
> repayment of the note.

Collins v. Wealthbridge Mortg. Corp. (In re Collins), 474 B.R.
317, 320 (Bankr. D. Me. 2012) (emphasis in the original).  If,
on the other hand, the research plaintiffs requested concerned
debts that were discharged in bankruptcy, the disclaimer that
concludes the October letter makes clear that the letter was not
an attempt to collect those debts.  Either way, the October
letter was not connected to the collection of a debt, which
entitles defendants to dismissal of plaintiffs' § 1692c(a)(2)
claim to the extent that claim is based upon the October letter.

The December letter, which also appears to have been a
response to a communication from plaintiffs, informed them that
Ocwen was assigning a "Relationship Manager" to "assist [them]
in identifying solutions for [their] mortgage questions."  Pls.'
Obj. (doc. no. 24), Attach. 3.  Like the October letter, the
December 2013 bears a disclaimer:

> **Notice Regarding Bankruptcy:**  Please be advised that .
> . . if you have received an Order of Discharge from a
> Bankruptcy Court, this letter is in no way an attempt
> to collect either a pre-petition, post petition or
> discharged debt.  . . .  If you have received an Order
> of Discharge in a Chapter 7 case, any action taken by
> us is for the sole purpose of protecting our lien
> interest in the underlying mortgaged property and is
> not an attempt to recover any amounts from you
> personally.

Id. (emphasis omitted).  Because plaintiffs' mortgage was not a
debt, see Worrall, 2013 WL 6095119, at *6; In re Collins, 474
B.R. at 320, Ocwen's December letter, which was all about
describing Ocwen's procedure for helping plaintiff find
solutions for their mortgage questions, was not a communication
"in connection with the collection of [a] debt," 15 U.S.C. §
1692c(a)(2).  Beyond that, Ocwen expressly disclaimed any intent
to collect a debt from plaintiffs.  So, as with the portion of
plaintiffs' § 1692c(a)(2) claim that is based on the October
letter, the portion of that claim that is based on the December
letter must also be dismissed for failure to state a claim upon
which relief can be granted.  Thus, plaintiffs' FDCPA claim
based on § 1692c is dismissed in its entirety.

### 2. Section 1692e

Plaintiffs claim that defendants are liable to them because
Ocwen violated four separate provisions of 15 U.S.C. § 1692e.
Specifically, they assert that Ocwen violated §§ 1692e(2), (5),
and (10) by attempting to collect debts that were discharged in
bankruptcy and violated § 1692e(11) by sending the two letters
that serve as the factual basis for their claim under §
1692c(a)(2).  Again, plaintiffs' amended complaint falls short
of the mark.

15 U.S.C. § 1692e, which is titled "False or misleading
representations," provides, in pertinent part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . . .

> **(2)** The false representation of –
>
>> **(A)** the character, amount, or legal status of any debt; or

. . . .

> **(5)** The threat to take any action that cannot legally be taken or that is not intended to be taken.

. . . .

> **(10)** The use of any false representation or deceptive means to collect any debt or to obtain information concerning a consumer.
>
> **(11)** The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector . . .

Id.

The Seventh Circuit has held that it is a violation of § 1692e(2)(A) for a creditor to attempt to collect a debt that has been discharged in bankruptcy.  See Ross v. RJM Acquisitions Funding LLC, 480 F.3d 493, 495 (7th Cir. 2007).  But plaintiffs do not adequately allege that Ocwen has attempted to collect a

26

debt that was discharged in bankruptcy.  As the court has already explained, a bankruptcy discharge of a borrower's debt on a promissory note does not preclude the borrower's mortgagee from attempting to recover the collateral that secured the borrower's promise to repay his or her lender.  See Worrall, 2013 WL 6095119, at *6; In re Collins, 474 B.R. at 320.

Here, plaintiffs allege that their "mortgage debt was discharged in bankruptcy."  First Am. Compl. ¶ 22 (emphasis added).  But they do not allege that their mortgage was modified or avoided in such a way that it was extinguished by their bankruptcy discharge.  And, they do not allege that Ocwen has attempted to collect any debt Ocwen once owed to the holder of its promissory note.  Because plaintiffs allege only that Ocwen has attempted to enforce Altisource's rights under the mortgage against the collateral that secured repayment of their loan, they have not adequately alleged any attempt by Ocwen to collect a debt that has been discharged in bankruptcy.  Thus, as to §§ 1692e(2), (5), and (10), plaintiffs have failed to state a claim upon which relief can be granted against Ocwen or Altisource.

15 U.S.C. § 1692e(11) makes it unlawful for a debt collector to fail to disclose, in a communication to a debtor, that the communication is from a debt collector.  But, as with § 1692c(a)(2), the conduct prohibited by § 1692e must have occurred "in connection with the collection of [a] debt," id.

Because the court has already determined plaintiffs have failed to allege that either the October letter or the December letter was sent in connection with debt collection, plaintiffs' § 1692e(11) claim also fails, which entitles defendants to its dismissal.

### 3. Section 1692f

Finally, plaintiffs assert that Ocwen violated 15 U.S.C. § 1692f(1) because

> it appears that the defendants sought to collect interest, late charges, and other amounts which were discharged in bankruptcy leading to a needless denial of modification efforts which would both save the plaintiffs['] home, AND save both Ocwen and Altisource the needless expense of foreclosure, especially where no deficiency judgment may be had as the debt was discharged in Bankruptcy.

First Am. Compl. ¶ 95.  The statute on which this claim is based, which is titled "Unfair practices," provides, in pertinent part:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> > **(1)** The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f.

As the court has already explained, enforcing a lien on a
mortgaged property that survives a bankruptcy discharge is not
an attempt to collect a debt.  Moreover, based upon Worrall, In
re Collins, and defendants' failure to allege any factual basis
for concluding that their mortgage was discharged in bankruptcy,
Ocwen is permitted by law to foreclose on plaintiffs' mortgage.
And, plaintiffs have not alleged that the interest, late
charges, and other fees on which they base their claim were not
expressly authorized by their mortgage.  Absent an attempt to
collect an unauthorized debt, there can be no violation of §
1692f(1), which entitles both defendants to dismissal of
plaintiffs' claim under that statute.

### 4. Summary

For the reasons detailed above, none of plaintiffs' FDCPA
claims survive scrutiny under Rule 12(b)(6).  Thus, Counts V-VII
are dismissed.

### I. Count VIII

Count VIII arises under New Hampshire's Unfair, Deceptive,
or Unreasonable Collection Practices Act ("UDUCPA"), N.H. Rev.
Stat. Ann. ("RSA") ch. 358-C, which is the "state-law analog" to
the federal FDCPA, Moore, 848 F. Supp. 2d at 123.  "Given the
dearth of case law on the UDUCPA, . . . FDCPA cases are . . .
useful in interpreting the UDUCPA 'because [the FDCPA] contains

provisions similar to the [UDUCPA].'" Id. at 125 n.10 (quoting Gilroy, 632 F. Supp. 2d at 136).

Plaintiffs allege that Ocwen: (1) violated RSA 358-C:3, V, by sending them letters in October and December 2013, after they had directed Ocwen to communicate with them only through their attorney; (2) violated RSA 358-C:3, VII; and (3) violated RSA 358-C:3, X, by attempting to collect "interest, late charges, and other amounts which were discharged in bankruptcy," First Am. Compl. ¶ 105.  Defendants are entitled to dismissal of Count VIII because they have not alleged that any of the conduct for which they seek to hold defendants liable involved actual or attempted debt collection.

RSA 358-C:3 prohibits a variety of acts when those acts are committed by a debt collector in the process of collecting or attempting to collect a debt.  And, the court recognizes that there are cases in which judges in this district have rejected defendants' attempts to avoid liability under RSA 358-C:3 on grounds that foreclosure does not qualify as debt collection for purposes of the UDUCPA.  See, e.g., Pruden v. CitiMortgage, Inc., No. 12-cv-452-LM, 2014 WL 2142155, at *8 (D.N.H. May 23, 2014); Moore, 848 F. Supp. 2d at 125.  But in both of those cases, the defendants engaged in two intermingled activities, trying to collect on a promissory note and attempting to foreclose on the mortgage securing repayment of the note.

30

Here, by contrast, Ocwen did not begin servicing plaintiffs' mortgage until three months after the debt they owed on their promissory note had been discharged in bankruptcy. Thus, there was never any debt for Ocwen to attempt to collect, only a mortgage to foreclose.  Absent any authoritative construction of the UDUCPA to the contrary, and in light of the strong parallels between the UDUCPA and the FDCPA, this court is persuaded by Judge McAuliffe's opinion in Beadle, 2005 WL 300060, at *3 ("Nearly every court that has addressed the question has held that foreclosing on a mortgage is not debt collection activity for purposes of the FDCPA."), and concludes that under the circumstances of this case, foreclosing on a mortgage that has survived bankruptcy is not debt-collection activity for purposes of the UDUCPA.  Absent any allegation of debt-collection activity, plaintiffs' claims under RSA chapter 358-C fail, which entitles defendants to dismissal of Count VIII.

### J. Count IX

Count IX is a claim under the New Hampshire Consumer Protection Act ("CPA"), RSA ch. 358-A.  That claim is based upon the following provision from the UDUCPA: "Any violation of the provisions of this chapter shall also constitute an unfair and deceptive act or practice within the meaning of RSA 358-A:2." RSA 358-C:4, VI.  Because plaintiffs have failed to state a

claim under the UDUCPA, they necessarily fail to state a
derivative CPA claim arising under RSA 358-C:4, IV.  Thus,
defendants are entitled to dismissal of Count IX.

### K. Count X

Count X is a free-standing CPA claim in which plaintiffs
assert that Ocwen committed the prohibited acts of: (1)
"[r]efusing to consider reasonable foreclosure alternatives,"
First Am. Compl. ¶ 116(a); (2) "[m]isrepresenting Administrative
Remedies prior to Foreclosure," id. ¶ 116(b); and (3)
"[i]mproperly holding up or denying Plaintiffs' several
modification applications," id. ¶ 116(c).  Defendants are
entitled to dismissal of Count X because all the conduct
underlying plaintiffs' CPA claims took place in the course of
exempt transactions.

The CPA provides that "[t]rade or commerce that is subject
to the jurisdiction of the bank commissioner" is exempt from the
CPA.  RSA 358-A:3, I.  As a mortgage servicer, Ocwen is "subject
to the jurisdiction of the New Hampshire Bank Commissioner
pursuant to N.H. Rev. Stat. Ann § 397-B." Aubertin v. Fairbanks
Capital Corp., No. Civ. 04-358-PB, 2005 WL 331351, at *2 (D.N.H.
Feb. 11, 2005).  Attached to their objection to defendants'
motion to dismiss, plaintiffs have submitted correspondence both
to and from the Banking Department concerning a complaint they
filed with the Department against Ocwen.  And, according to a

letter to plaintiffs from the Department, their complaint remains open.  See Pls.' Obj. (doc. no. 24), Attach. 7, at 2. Notwithstanding plaintiffs' argument that the Banking Department gave them "implied permission," Pls.' Obj. 21, to continue this litigation, the Banking Department does not have the power to suspend the exempt-transactions provision of the CPA nor has it ceded its jurisdiction over plaintiffs' complaint about Ocwen. Because Count X arises from transactions in trade or commerce that is subject to the jurisdiction of the bank commissioner, the claims stated in Count X are barred by RSA 358-A:3, I, which entitles defendants to dismissal.

### L. Count XI

Count XI is plaintiffs' claim that defendants are liable to them for negligent infliction of emotional distress.  That claim is based upon plaintiffs' allegations that defendants engaged in "extreme and outrageous conduct in failing to deal [with them] in a commercially reasonable manner, and by mishandling [their] modification, and then by finally continuing to keep [their] property in foreclosure."  First Am. Compl. ¶ 120.  As a result of that conduct, plaintiffs claim to have suffered "loss of appetite, upset stomach, head ache, sleeplessness, etc."  Id. ¶ 121.

"[A] claim for [negligent infliction of emotional distress], like any other negligence claim, demands the existence of a duty

from the defendant to the plaintiff." Moore, 848 F. Supp. 2d at 135 (quoting BK v. N.H. Dep't of Health & Human Servs., 814 F. Supp. 2d 59, 72 (D.N.H. 2011)).  The court has ruled that plaintiffs have failed to state a claim for negligence because they failed to identify a legally cognizable duty they were owed by Ocwen.  For this same reason, plaintiffs have also failed to state a claim for negligent infliction of emotional distress, see Moore, 848 F. Supp. 2d at 135.  Defendants are therefore entitled to dismissal of Count XI.

### IV. Conclusion

For the reasons detailed above, defendants' motion to dismiss, document no. 23, is granted.  The clerk of the court shall dismiss plaintiffs' complaint and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge


April 7, 2015

cc:   Jessica Suzanne Babine, Esq.
      Keith A. Mathews, Esq.
      John F. Skinner, III, Esq.